UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TIERRE CRUMMIE,

    Plaintiff,

v.

CERTIFIEDSAFETY, INC.,

    Defendant.

Case No. 17-cv-03892-RS

**ORDER DENYING MOTION TO REMAND**

# I. INTRODUCTION

Plaintiff Tierre Crummie filed this putative class action in Alameda Superior Court. The operative First Amended Complaint asserts various wage and hour violations against defendant CertifiedSafety, Inc. on behalf of hourly-paid or non-exempt employees who worked for CertifiedSafety during any period from April 24, 2013 through time of judgment. The complaint does not disclose the dollar amount in controversy.

CertifiedSafety removed the action to this court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), *see* 28 U.S.C. § 1332(d), contending that the amount in controversy can be reasonably estimated to exceed the $5 million threshold for jurisdiction under CAFA. Crummie seeks remand, arguing that CertifiedSafety has not met its burden to establish the amount in controversy is sufficient. Because CertifiedSafety has presented reasonable estimates sufficiently grounded in evidence, and Crummie has provided no rebuttal evidence, the motion to remand will be denied.

## II. LEGAL STANDARDS

The applicable legal standards are well-summarized in *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 4579099, at *2-*3 (N.D. Cal. Sept. 2, 2016) as follows:

> The Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d), gives federal courts original jurisdiction over class actions where there are at least 100 class members, at least one plaintiff is diverse in citizenship from any defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). A class action that meets CAFA standards may be removed to federal court. 28 U.S.C. § 1441(a). Unlike the general presumption against removal, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). In fact, Congress intended CAFA jurisdiction to be "interpreted expansively." *Ibarra*, 775 F.3d at 1197.
>
> Under CAFA, a defendant removing a case must provide "a short and plain statement of the grounds for removal. . . ." *Id*. A defendant's notice of removal needs only a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and does not need evidentiary submissions. *Id*. (*quoting Dart*, 135 S. Ct. at 554).
>
> When testing the amount in controversy alleged, courts look first to the allegations of the complaint. *Id*. If the damages are understated or if the defendant argues the damages are understated, the defendant must show by a preponderance of evidence that the aggregate amount exceeds the $5,000,000 threshold. *Id*. The defendant in a jurisdictional dispute has the "burden to put forward evidence showing that the amount in controversy exceeds $5 million, to satisfy other requirements of CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one." *Id*. at 1197.
>
> When the plaintiff contests the defendant's amount-in-controversy

allegations, both sides submit proof, and the court decides whether the jurisdictional threshold has been met. *Id*. (quoting *Dart*, 135 S. Ct. at 554). The parties may submit evidence beyond the complaint such as affidavits, declarations, or other "summary-judgment type evidence relevant to the amount in controversy . . . ." *Singer v. State Farm Mut. Auto. Ins. Co*., 116 F.3d 373, 377 (9th Cir. 1997).

"Mere speculation and conjecture, with unreasonable assumptions" is not sufficient to establish removal jurisdiction. *Ibarra*, 775 F.3d at 1197; see also *Fong v. Regis Corp*., No. 13-cv-04497-RS, 2014 WL 26996, at *2 (N.D. Cal. Jan. 2, 2014). However, the burden to establish the amount in controversy by a preponderance of the evidence does not require the defendant to "research, state, and prove the plaintiff's claims for damages." *Donald v. Xanitos, Inc*., No. 14-CV-05416-WHO, 2015 WL 1774870, at *4 (N.D. Cal. 2015) (quoting *Korn v. Polo Ralph Lauren Corp*., 536 F. Supp. 2d 1199, 1204 (E.D. Cal. 2008)). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.

"When measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaints." *Fong* 2014 WL 26996 at *2. "[CAFA] tells the district court to determine whether it has jurisdiction by adding up the value of the claim[s] of each person who falls within the definition of [the] proposed class and determin[ing] whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013).

III. DISCUSSION

In support of its Notice of Removal, Certified Safety submitted the declaration of Stephen Hines, its Vice President of Human Resources, setting out the assumptions and figures it had used

to calculate an amount in controversy of not less than $5,004,030.[1] In opposition to the remand motion, Hines provides a supplemental declaration, and Certified Safety claim additional items of potential recovery to increase the amount in controversy to $6,743,912.50.[2]

Hines states, and Crummie does not challenge, that the number of employees encompassed by the proposed class definition is 802.[3] Hines sets out the hourly wage range for putative class members ($13 to $31.50) and the cumulative total of workweeks. Hines explains the basis of his calculations for estimated total unpaid wages ($131,062), missed meal breaks ($467,217), missed rest breaks ($477,117), wage statement claim penalties ($331,200), and failure to pay minimum wage penalties ($839,500). In each instance Hines sets out the number of employees believed to be affected, and avers that the employees' actual pay rates were used in making the calculations.

Finally, in the largest ticket item of the original $5,004,030 total, Hines calculates $2,757,034 as the amount in controversy for waiting time penalties, based on 684 putative class members who left their employment with CertifiedSafety during the class period up to the time the complaint was filed. The figure utilizes the actual pay rates of each employee, and is based on the full 30 day maximum penalty available.

The parties' dispute turns on whether CertifiedSafety is entitled to assume that class members worked the equivalent of 30 minutes "off the clock" each and every work week, missed one meal period in 50% of the shifts they worked, missed one rest period in 50% of the shifts, and that they may be entitled to the maximum penalties on the wage statement, minimum wage, and

---

[1] Crummie objects to the Hines declaration as vague and lacking in foundation, and faults it for not attaching all of the underlying corporate records on which it is based. As support for the original notice of removal, the declaration needed only to present "plausible allegations" and it did not have to constitute an admissible evidentiary submission. *Ibarra*, 775 F.3d at 1197. To the extent the declaration is offered as evidence in opposition to remand, the objections are overruled. Hines lays an adequate foundation for the facts he asserts and neither the original nor supplemental declarations are unduly vague or otherwise inadmissible.

[2] CertifiedSafety omits $900 in estimated potential PAGA penalties, which Crummie argues do not count towards the amount in controversy requirement.

[3] That number could rise as the alleged class period has not terminated.

waiting time claims. The First Amended Complaint is replete with verbiage suggesting that the alleged violations were pervasive, wide-spread, and ongoing. *See*, *e.g.*, FAC, para. 32 (CertifiedSafety "engaged in a uniform policy/practice . . . . ); para. 44 ("At all material times set forth herein, Defendants failed to pay overtime . . . ."). As Crummie points out, however, such allegations, standing alone, do not support an assumption that the amount in controversy can be properly calculated using an assumption of a "100% violation rate." *See Ibarra*, 775 F.3d at 1198–99 ("a 'pattern and practice' of doing something does not necessarily mean always doing something . . . . While it is true that the complaint alleges that Manheim maintains 'an institutionalized unwritten policy that mandates' the employment violations alleged in the complaint, including the denial of meal and rest periods, this does not mean that such violations occurred in each and every shift.")

Here, however, CertifiedSafety has not premised its calculations on a presumed 100% violation rate. Rather, it has more conservatively assumed that putative class members were required to work only a half hour unpaid overtime each week, and missed meal and rest breaks only every other shift, on average. While Certified Safety does assume maximum penalties are at stake, that is hardly an unreasonable position in the context of the claims being advanced. For example, Crummie insists there must be some additional evidentiary showing that all or virtually all putative class members may claim a full 30 days of waiting time penalties. If the gravamen of the allegation were that CertifiedSafety was sometimes tardy in providing final paychecks, then indeed it would not be reasonable to assume that nearly all employees did not get their final paychecks for 30 or more days. Crummie's theory, however, plainly is that putative class members were owed (and are still owed) pay for overtime and missed meal and rest breaks, even if their final paychecks were otherwise timely delivered. Thus, it is completely reasonable to assume waiting time penalties accrued to the thirty-day limit because of those unpaid sums.

Crummie may be correct that CertifiedSafety has presented no direct evidence to ground its assumptions of a weekly half hour in unpaid overtime and a 50% violation for meal and rest breaks on empirical data. Crummie's alternate proposal to assume a 25% violation rate, however,

is likewise untethered to factual evidence.[4] Crummie insists he has no obligation to come forward with such evidence because CertifiedSafety has the burden of establishing jurisdiction.

While the ultimate burden does lie with CertifiedSafety, most typically once jurisdiction has been challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart*, 135 S. Ct. at 554. There nonetheless may be cases where plaintiff can successfully resist remand merely by showing through argument (as opposed to by submitting rebuttal evidence) that the removing defendant's evidence is insufficient to support jurisdiction. This is not such a case, because CertifiedSafety has made an adequate showing that the amount in controversy exceeds the $5 million threshold, notwithstanding that the violation rate and penalty rates it utilizes in its calculations are presumed, rather than established by statistical or other direct evidence.

CertifiedSafety is entitled to make such assumptions, as long as they are *reasonable*, given both the allegations of the complaint, and whatever factual evidence may be available in the record. *See Ibarra*, 775 F.3d at 1199 ("[E]vidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions."); *see also Garza v. Brinderson Constructors, Inc.*, No. 15-CV-02661-RMW, 2016 WL 1298390, at *3 (N.D. Cal. Apr. 4, 2016) (defendant's "assumption of one violation per week is reasonable based on the allegations of the SAC" that defendant regularly failed to provide rest breaks and had a "pattern and practice" of failing to provide those breaks); *see generally*, *Mackall*, *supra*, 2016 WL 4579099 (rejecting calculations based on 100% violation rate, but denying remand where more conservative assumptions, strikingly similar to those made by defendant here, still resulted in an amount in controversy over the threshold).

Even with the $900 PAGA penalty eliminated, CertifiedSafety's original calculation of the

---

[4] See, *Ibarra*, 775 F.3d at 1199 (plaintiff "did not assert an alternative violation rate grounded in real evidence, such as an affidavit . . . asserting how often he was denied meal and rest breaks.")

amount in controversy submitted with the notice of removal exceeds $5 million.  While the parties dispute how large a dollar figure for attorney fees may properly be added on, such fees unquestionably may be considered, and provide an additional margin of error here.  As the total therefore comfortably exceeds the jurisdictional threshold, this order need not reach the propriety of considering the potential of additional penalties under Labor Code section 204, which Crummie contends have not been sought as part of the class action claims.

## IV.  CONCLUSION

The motion to remand is denied.

**IT IS SO ORDERED**.

Dated:  October 11, 2017

_____
RICHARD SEEBORG
United States District Judge